# Edward Capps, Appellee, v. The University of Chicago, Appellant.

## Gen. No. 15,643.

EMPLOYER AND EMPLOYE—*when acceptance of resignation does not terminate employment.* If the resignation of an employe be not accepted as offered, such acceptance is not binding upon the party offering the resignation and does not terminate the employment.

Appeal from the Municipal Court of Chicago; the HON. HOSEA W. WELLS, Judge, presiding. Heard in this court at the October term, 1909. Affirmed. Opinion filed December 21, 1911.

JUDAH, WILLARD, WOLF & REICHMANN, for appellant.

NEWMAN, NORTHRUP, LEVINSON & BECKER, for appellee; SALMON O. LEVINSON and CHESTER E. CLEVELAND, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The appellee, hereinafter called the plaintiff, brought a suit of the first class in the Municipal Court of Chicago against the appellant, hereinafter called the defendant, for the sum of $2500. The defendant by plea admitted owing the plaintiff $1666.67 and averred a tender thereof and by plea, with an affidavit of merits, denied owing the balance, $833.33, of said sum claimed. Under the statute the court entered judgment against the defendant for $1666.67, which was paid and the cause proceeded to trial on the issue so made as to $833.33. The jury found the issues for the plaintiff and assessed his damages at $833.33, and the court entered judgment on the verdict. From the said judgment this appeal is prosecuted.

The plaintiff was employed by the defendant in 1892 as an assistant professor of Greek. In 1900 he be-

came a professor of Greek with an annual salary from October 1, 1901, of $3000, payable $250 monthly. This annual salary he received for nine months actual work in twelve equal monthly installments, pursuant to the practice of the defendant under its by-laws and regulations adopted by its board of trustees. We are not able to clearly distinguish from the record between by-laws and "rules and regulations;" and the term commonly applied thereto in the record appears to be "statutes" of the University, and we shall accordingly so use it.

Under the said statutes of the University a professor therein was allowed "vacation credits"—that is, for every three months' teaching he was given credit for four months' services. In this way a professor working nine months of the year was given a "vacation credit" of three months. The vacation credits might be accumulated; that is, if a professor worked continuously for three years, he would have a vacation credit of one year. The particular time the vacation was allowed was, under the statutes, arranged with the president of the University, and during the said vacation the professor would be paid the regular monthly installments of his salary. The said statutes further provided extra vacation credits would be allowed for extra work done by a professor and statute 19 was in part as follows: "He receives, according as it may be arranged by the president, either an extra full pro rata vacation, or an extra two-thirds salary, payable monthly during such vacation period. In case of resignation, or death, vacation credit thus earned is paid for on the basis of two-thirds pro rata salary."

The plaintiff did extra work on the decennial publications of the defendant under an arrangement with the then president, Dr. Harper, for which he was to receive extra vacation credit. There was at first some controversy pertaining to the credits and the time thereof earned by plaintiff, but it was finally agreed

that it was ten months at $250 per month.    There was evidence tending to show that the practice was to arrange for vacations in advance "either with the heads of the department or with the President;" that in November, 1903, Dr. Harper had written plaintiff pertaining to his vacation: "I therefore write to say that you are at liberty to adjust the matter according to your best convenience with Mr. Shorey;" that the plaintiff had arranged the time of his vacations with Professor Shorey, the head of his department, and late in 1906 the plaintiff arranged with said Professor that he take his vacation according to his vacation credits during the school year 1907-1908.    It also appeared that Dr. Judson, acting president from January, 1906, to February, 1907, when he was elected President, had knowledge that plaintiff made his vacation arrangements with Professor Shorey and was satisfied with the same.

The plaintiff was elected a professor of Princeton University—just when does not appear—and with knowledge of said statute 19 on June 19, 1907, wrote the President of the defendant the following letter:

"My dear President Judson:

"Since I have just been notified of my election at Princeton I place in your hands my resignation as professor of Greek, to be presented to the trustees at your convenience.

"In order not to prejudice my case as regards my outstanding vacation credit may I ask that this resignation take effect constructively at the end of the period covered by this vacation, especially since it was arranged in connection with next year's budget I should be absent on vacation during the year 1907-1908.    The facts regarding this vacation are briefly presented in the accompanying memorandum, and I trust that they will receive a favorable interpretation at your hands.

"I need not assure you that I close my connection of fifteen years with the University with deep regret.    I

shall always rejoice in its prosperity and growth, and shall not cease to recognize its claim to my allegiance.
"Sincerely yours,
"Edward Capps."

The plaintiff continued to teach for the defendant until September 30, 1907. On October 15, 1907, at a meeting of the board of trustees the following action was taken as shown by the minutes of the meeting:

"At a meeting of the Committee (on Instruction and Equipment) held September 25, the following action was taken. The matter of the resignation of Professor Capps was taken up and after full consideration it was recommended that, in view of the fact that he has accepted an appointment in another University, it take effect September 30, 1907, when his work at the University ceases, instead of on the date indicated by him. The recommendations of the Committee on Instruction and Equipment were taken up in order and adopted."

It was the custom of the defendant to pay the full salary during actual vacations without any attempt to control the time or in any way interfere with or restrict a professor during said vacation. It was understood that he was at liberty to employ his said vacation time as he saw fit and he might be otherwise employed, even teach at some other institution of learning, and at the same time receive his regular salary from the defendant. The plaintiff was entitled to ten months' vacation and to receive $250 per month during said time, or to continue teaching and receive in addition to his regular salary $166.66 per month for said ten months, as might be arranged by the president under said statute 19. As stated, arrangements, apparently satisfactory to all parties, had been made that plaintiff was to have his said vacation during the school year 1907-1908. We think it is clear that if the plaintiff had tendered no resignation, but started on his vacation October 1st, he could have accepted a position at Princeton and been entitled to receive from the defendant $250 per month for ten months. It therefore

appears that the controlling question is: Was the resignation of the plaintiff to take effect at the will of the defendant, or was it to take effect at the expiration of the said vacation period? If it be construed that it take effect at the will of the defendant, then under statute 19 the tender by the defendant of $1666.67 was good and there can be in this case no further recovery. By the first paragraph of said letter it might appear that the resignation was to take effect when the President might see fit to present it to the board of trustees. On the other hand, in courteous language he asks that his resignation not take effect until the end of the period covered by the arranged for vacation, in order not to prejudice his vacation credits, and evidently with a view of protecting himself against the said statute 19, that provided in case of resignation he would only be paid two-thirds of his vacation salary. The construction of said letter is by no means free from difficulty. The defendant, by its said minutes, accepted the resignation to "take effect September 30, 1907, * * * instead of on the date indicated by him." We think that the defendant thereby construed the letter to mean that the plaintiff intended his resignation to take effect at the end of the vacation period, and that being the construction of the letter by both parties, we adopt the same. The resignation was then conditional on its being accepted to take effect at the end of the vacation period, ten months from October 1, 1907, and its acceptance was subject to the conditions imposed. Savannah Cotton Mills v. Cunningham, 100 Ga. 468. It not being accepted as offered, but on other terms than those tendered, such acceptance was not binding on the plaintiff, and the plaintiff, under such circumstances, could not be held to have resigned other than conditionally, that is, to take effect in the future, as indicated, without prejudice to his vacation credit. If the resignation tendered was not acceptable to the defendant, it could have refused to accept

it, and the plaintiff on being so notified might have withdrawn same and thereupon, under the evidence, could have recovered.    Board of Trustees v. Bruner, 66 Ill. App. 665; affirmed 175 Ill. 307.

It is urged that the court erred in his rulings on the admission and rejection of certain evidence.    A large part of this record consists of objections and comments thereon by various counsel.    We shall not extend this opinion to greater length by a discussion thereof, for we are of the opinion that there was no reversible error in said rulings or in instructions given or refused, of which counsel complain.

The judgment is affirmed.

*Affirmed.*